J-S37025-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| PAUL LOUIS | |
| Appellant | No. 1952 MDA 2013 |

Appeal from the Judgment of Sentence entered September 26, 2013
In the Court of Common Pleas of Berks County
Criminal Division at No: CP-06-CR-0004582-2012

BEFORE:  LAZARUS, STABILE, AND MUSMANNO, JJ.

MEMORANDUM BY STABILE, J.:                **FILED OCTOBER 02, 2014**

Appellant Paul Louis appeals from a judgment of sentence, which the Court of Common Pleas of Berks County (trial court) imposed after convicting him of violating Sections 3744(a) and 3714(a) of the Vehicle Code (Code) following a bench trial.  For the reasons set forth below, we affirm.

The facts and procedural history of this case are undisputed.  As the trial court recounted:

> Following a jury trial on August 29, 2013, [Appellant] was found not guilty of [a]ccidents [i]nvolving [d]eath or [p]ersonal [i]njury.[1]   After the jury trial was completed, this court conducted a bench trial on the outstanding summary offense counts and found [Appellant] guilty of the [d]uty to [g]ive [i]nformation and [r]ender [a]id[2] [(Section 3744)] and

---

[1] 75 Pa.C.S.A. § 3742(a).

[2] 75 Pa.C.S.A. § 3744(a).

[c]areless [d]riving,[3] [(Section 3714(a))] and not guilty of the offenses of the [i]mmediate [n]otice of [a]ccident to [p]olice [d]epartment[4] and [d]rivers [r]equired to be [l]icensed.[5] The Commonwealth withdrew Count 6, [f]ailure to [n]otify, prior to trial.[6] The facts presented at the jury trial were incorporated into the bench trial.

Angelina Mezier-Augustus [(Mezier-Augustus)] testified that on June 14, 2012, at approximately 8:00 p.m., she had double parked her vehicle, a Dodge Avenger, in the vicinity of 114 Windsor Street, Reading, Berks County, Pennsylvania, to visit her sister for a couple of minutes. Her boyfriend, Karl Jean, had remained seated in the vehicle on the front passenger side while she had visited. Ms. Mezier-Augustus testified that it had been a clear day and daylight had still remained. She had turned off the engine but had her four-ways on. Her headlights go on automatically when it is dark, and they had not been on when she had parked. Windsor Street is a two-way street with one lane of traffic each way.

After her visit with her sister, Ms. Mezier-Augustus crossed the street to attempt to get into her vehicle. There were several drivers who were proceeding around her car, so she leaned over her vehicle as far as she could to avoid being hit. The last vehicle, a compact red car, however, kept proceeding closer to her vehicle. She heard a loud noise which she described as a "big boom" . . . followed by her sister's scream. Ms. Mezier-Augustus then screamed and fell to the ground when the red car struck her. The driver did not stop. Following this accident, Ms. Mezier-Augustus' car had a dent on the driver's side between the door and the window that had not been there before the accident. Ms. Mezier-Augustus never saw the driver of the vehicle that hit her. Ms. Mezier-Augustus remained lying on the street near the yellow line until the police and the ambulance arrived. She screamed for help because she was unable to move her right leg. The ambulance transported her to the hospital where she remained for approximately two days. Ms. Mezier-Augustus was unable to walk for approximately six to eight weeks and had to use crutches.

Karl Jean testified that it was still light out when Ms. Mezier-Augustus was struck down. He testified that Ms. Mezier-Augustus' vehicle shook when Ms. Mezier-Augustus was hit. He immediately slid into the driver's seat and pursued the red car. The driver slowed down after the impact, but then he sped up

---

[3] 75 Pa.C.S.A. § 3714(a).

[4] 75 Pa.C.S.A. § 3746(a)(1).

[5] 75 Pa.C.S.A. § 1501(a).

[6] 75 Pa.C.S.A. § 3746(a)(2).

and drove off. Mr. Jean followed the vehicle until he lost it in the West Lawn area. The chase lasted approximately ten to fifteen minutes, and Mr. Jean beeped the horn throughout the chase to get the other driver's attention. At one point during the pursuit, the fleeing driver stopped the car, and Mr. Jean pulled up alongside of him and saw his face. Mr. Jean identified [Appellant] as the person he had seen driving the vehicle which had struck the victim. Mr. Jean gave [Appellant]'s license plate number to the Reading Police Department.

Daniel Cedano, a police officer for the City of Reading, received the call about the incident at approximately 8:40 p.m. He testified that the sun had been setting when he had arrived at the scene, but it had still been daylight. He had spoken to the victim who had appeared to be in pain. She had contusions and bruising to her lower back and right buttock.

Officer Cedano ran the license plate information through the NCIC system. He located the owner of the vehicle, and at the owner's residence he observed damage to a red car on the vehicle's passenger side. Officer Cedano interviewed [Appellant] at the owner's residence. [Appellant] admitted to Officer Cedano that he had been driving the car on June 14, 2012, at 8:40 p.m., in the vicinity of the accident; however, he did not recall striking another vehicle and a woman pedestrian who had been standing next to the vehicle. [Appellant] remembered being followed by a frantic male driver who had been trying to flag him down. [Appellant] had not stopped because he had been concerned about his safety.

Based on the foregoing evidence, the jury found [Appellant] not guilty of [a]ccidents [i]nvolving [d]eath or [p]ersonal [i]njury. The court incorporated the evidence from the jury trial into the bench trial proceeding and found [Appellant] guilty of the aforementioned summary offenses. This court held a sentencing hearing on September 26, 2013. For the conviction of the [f]ailure to [s]top and [g]ive [i]nformation and [r]ender [a]id, this court imposed a fine of $25.00 and costs. For the conviction of the summary of [c]areless driving, this court imposed a fine of $250.00, costs, and restitution in the amount of $17,03.53 for unpaid medical expenses and property damage. This court denied [Appellant]'s [p]ost-Sentence [m]otion. [Appellant] filed a timely appeal.

Trial Court Opinion, 2/24/2014, 1-4. Following Appellant's filing of a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, the trial court issued an opinion under Pa.R.A.P. 1925(a). In its Rule 1925(a) opinion, the trial court determined, *inter alia*, that (1) there was sufficient evidence to convict Appellant under Sections 3744 (duty to give information

and render aid) and 3714(a) (careless driving) of the Code; (2) its verdict was not against the weight of the evidence to warrant a new trial; and (3) it did not err in imposing restitution in amount of $17,035.53.

On appeal, Appellant essentially raises four issues for our review. First, Appellant argues that the trial court erred in holding that the evidence was sufficient to convict him under Sections 3744(a) and 3714(a) of the Code. Second, in the alternative, he argues that the trial court abused its discretion in concluding that its verdict was not contrary to the weight of the evidence. Third, Appellant argues that the trial court erred in concluding the evidence of record was sufficient to sentence him to pay a fine of $250 under Section 3714(c) of the Code. Fourth, he argues that the trial court erred in imposing upon him restitution for $17,035.53, because no causal nexus exists between Mezier-Augustus' injuries and his conviction for careless driving.

We first address Appellant's sufficiency of the evidence challenge. Specifically, Appellant argues that evidence was insufficient to sustain his conviction under Sections 3744(a) and 3714(a) of the Code. With respect to Section 3744(a), Appellant claims that the Commonwealth failed to establish the requisite knowledge (*mens rea*) required to convict him of failing to give information and render aid. Likewise, he argues that the Commonwealth failed to establish the element of "careless disregard" under Section 3714(a).

Our standard and scope of review for a sufficiency claim is well-settled:[7]

> We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.
>
> The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

***Commonwealth v. Mobley****,* 14 A.3d 887, 889–90 (Pa. Super. 2011).

Additionally, "in applying the above test, the entire record must be evaluated and all evidence actually received must be considered." ***Commonwealth v. Coleman****,* 19 A.3d 1111, 1117 (Pa. Super. 2011).

Section 3744 of the Code provides in pertinent part:

> **(a) General rule.**--The driver of any vehicle involved in an accident resulting in injury to or death of any person or damage to any vehicle or other property which is driven or attended by any person shall give his name, address and the registration number of the vehicle he is driving, and shall upon request exhibit his driver's license and information relating to financial responsibility to any person injured in the accident or to the driver or occupant of or person attending any vehicle or other property damaged in the accident and shall give the information

---

[7] A challenge to the sufficiency of the evidence is a question of law, subject to plenary review. ***Commonwealth v. Williams****,* 871 A.2d 254, 259 (Pa. Super. 2005).

and upon request exhibit the license and information relating to financial responsibility to any police officer at the scene of the accident or who is investigating the accident and shall render to any person injured in the accident reasonable assistance, including the making of arrangements for the carrying of the injured person to a physician, surgeon or hospital for medical or surgical treatment if it is apparent that treatment is necessary or if requested by the injured person.

75 Pa.C.S.A. § 3744(a). This Court long has held "[k]nowledge that one has injured some person or damaged the property of another user of the highway is an essential element of the offense." *Commonwealth v. Adams*, 23 A.2d 59, 61 (Pa. Super. 1941) (interpreting a prior but substantially similar version of Section 3744(a)). "This may be shown by direct proof or *by proof of circumstances from which knowledge may reasonably be inferred*, but a strong suspicion that he knew is not sufficient." *Id.* (citation omitted) (emphasis added).

Here, in support of the charges, the Commonwealth presented the testimony of Ms. Mezier-Augustus, Mr. Jean, and Officer Cedano. Ms. Mezier-Augustus testified that on a good summer night, on June 14, 2012, she had double-parked her car across the street from her sister's house, because she intended to pay a brief visit to her sister who was sitting on her porch. N.T. Trial, 8/29/13, at 14-16. Describing the accident that ensued after she visited her sister, Ms. Mezier-Augustus testified:

All I remember is I had crossed the street and I was going to attempt to get into my car, but there was a couple of cars that was passing so I, you know, leaned over to my car as soon as—I mean as much as I could, to allow the cars to pass by. And there was multiple cars that was passing.

And everything was fine, and then I noticed a red car coming towards me and of course I leaned over, but to—my intention is—I'm thinking it's just going to be just like all the other cars

- 6 -

that was passing by and he was going to, you know, avoid hitting me, but, you know, I held on and as it was coming closer, I just looked straight into the car to push myself as much as I can and I just remember hearing a loud noise and then my sister started screaming because I guess she was basically thinking if I got hit or if I didn't get it. And as soon as I heard her scream, I screamed.

*Id.* at 17-18. The Commonwealth next presented the testimony of Mr. Jean, who testified that after visiting her sister for a couple of minutes, Ms. Mezier-August returned to her parked vehicle. *Id.* at 46-47. Upon returning to the vehicle, according to Mr. Jean, Ms. Mezier-Augustus "stood at the driver's side door waiting to get in [right before the accident]." *Id.* at 47. Recalling the accident, Mr. Jean testified "[a]nd this red car came out of nowhere and hit her. And she fell to the ground. . . . [The car] did slow down [thereafter] and then it sped up and kept going." *Id.* at 47-48. He further testified that at the time Ms. Mezier-Augustus was hit, he heard a "big boom sound." *Id.* at 49.

Finally, Officer Cedano testified for the Commonwealth. He testified that after running the red car's plate numbers through the NCIC system, he located the owner of the vehicle. *Id.* at 79-81. Upon arriving at the owner's residence, he observed a red vehicle with damage to its passenger side. *Id.* at 81. He interviewed Appellant at the residence and Appellant admitted to Officer Cedano "he was driving that vehicle on June 14th at approximately 8:40 p.m. in the area of [the accident]." *Id.* at 83. Officer Cedano also testified that Appellant denied striking Ms. Mezier-Augustus with his vehicle. *Id.* at 83.

Based upon our review of the entire record and viewing the evidence in light favorable to the Commonwealth, thereby giving it the benefit of the reasonable inferences derived therefrom, we conclude that the Commonwealth presented sufficient evidence to sustain Appellant's conviction for failure to give information and render aid under Section 3744(a) of the Code. Indeed, as the trial court specifically found:

> [T]he testimony of all of the witnesses sustained the conviction for the summary [d]uty to [g]ive [i]nformation and [r]ender [a]id offense. Ms. Mezier-Augustus and Mr. Jean testified that an accident occurred in which [Ms. Mezier-Augustus] . . . [was] struck [and injured.] Mr. Jean positively identified [Appellant] as the operator of the other vehicle, and at no time did [Appellant] stop and identify himself or offer assistance. Furthermore, [Appellant] admitted to Officer Cedano that he had been driving in the vicinity of the accident when it had occurred. His striking of [Ms. Mezier-Augustus'] vehicle created a loud "boom" and shook the car. Therefore, [Appellant] *knew* that he had hit another vehicle, if not a person.

Trial Court Opinion, 2/24/14, at 6-7 (emphasis added). Accordingly, given the circumstantial evidence, especially the fact that the collision caused a loud noise, the trial court did not err in concluding that Appellant had sufficient knowledge under Section 3744(a) that he was involved in an accident.[8]

---

[8] Appellant argues that, because the jury acquitted him of the misdemeanor charge under Section 3742(a) of the Code, relating to accidents involving death or personal injury, the trial court erred in convicting him under Section 3744(a) during a simultaneous bench trial. Specifically, he argues that the trial court's finding that he knew of the accident was inconsistent with the jury's finding to the contrary. We disagree. Preliminarily, we note that the courts in this Commonwealth long have held that inconsistent verdicts are permissible in Pennsyvlania. **See Commonwealth v. Barger**, 956 A.2d 458, 460-61 (Pa. Super. 2008) (*en banc*), **appeal denied**, 980 A.2d 109

*(Footnote Continued Next Page)*

We next turn to Appellant's argument that sufficient evidence did not support his conviction for careless driving under Section 3714(a) of the Code. In this regard, Appellant specifically argues that the Commonwealth failed to prove the element of careless disregard.

Section 3714 of the Code, relating to careless driving, provides in part:

> **(a) General rule.--**Any person who drives a vehicle in careless disregard for the safety of persons or property is guilty of careless driving, a summary offense.

75 Pa.C.S.A. § 3714(a). "The *mens rea* requirement applicable to [Section] 3714, careless disregard, implies less than willful or wanton conduct but more than ordinary negligence or the mere absence of care under the circumstances." **Commonwealth v. Gezovich**, 7 A.3d 300, 301 (Pa. Super. 2010) (citations omitted).

Instantly, we agree with the trial court's conclusion that sufficient evidence supported Appellant's conviction under Section 3714(a). As the trial court specifically found:

> [Appellant] hit Ms. Mezier-Augustus and her vehicle, causing her serious bodily injury and damage to her automobile. This was not an unavoidable accident. At least two or three cars in front

_____
*(Footnote Continued)*

(Pa. 2009). Moreover, in a consolidated jury/nonjury trial—*i.e.*, when summary offenses are joined at trial with other charges—the judge as the fact-finder, independent of the jury, need not defer to the jury's findings on common essential issues. **See Commonwealth v. Yachymiak**, 505 A.2d 1024, 1027 (Pa. Super. 1986) ("[A]n acquittal cannot be interpreted as a specific finding in relation to some of the evidence. The acquittal may be no more than the jury's assumption of a power which they had no right to exercise, but to which they were disposed through lenity."). Accordingly, we reject Appellant's argument as lacking merit.

of [Appellant] went around [Ms. Mezier-Augustus] without mishap. In an attempt to avoid being hit by [Appellant], Ms. Mezier-Augustus pressed herself even closer to her vehicle than she had been for the earlier drivers. Clearly, [Appellant] drove his vehicle in a careless disregard for the safety of [Ms. Mezier-Augustus] and her vehicle.

Trial Court Opinion, 2/24/14, at 7.[9]   Thus, as noted earlier,   viewing the record evidence in light favorable to the Commonwealth, thereby giving it the benefit of the reasonable inferences derived therefrom, we conclude that the trial court did not err in convicting Appellant of careless driving under Section 3714(a).

Appellant next argues that the trial court's verdict was against the weight of the evidence.  We review weight-related issues as follows:

The weight given to trial evidence is a choice for the factfinder. If the factfinder returns a guilty verdict, and if a criminal defendant then files a motion for a new trial on the basis that the verdict was against the weight of the evidence, a trial court is not to grant relief unless the verdict is so contrary to the evidence as to shock one's sense of justice.

When a trial court denies a weight-of-the-evidence motion, and when an appellant then appeals that ruling to this Court, our review is limited. It is important to understand we do not reach the underlying question of whether the verdict was, in fact, against the weight of the evidence. We do not decide how we would have ruled on the motion and then simply replace our own judgment for that of the trial court. Instead, this Court determines whether the trial court abused its discretion in

---

[9] We additionally agree with the trial court's observation:

It is immaterial that [Ms. Mezier-Augustus'] car was double-parked. If [Appellant] had not been able to go safely around the vehicle, he should have come to a complete stop and not have attempted his maneuver. A motorist, encumbered by a parked automobile, is charged with the responsibility of approaching the vehicle with the care commensurate with the dangers attendant on intervening obstructions. *Berks v. LeQuin*, 194 A.2d 136[, 138] (Pa. 1963).

Trial Court Opinion, 2/24/14, at 7.

> reaching whatever decision it made on the motion, whether or not that decision is the one we might have made in the first instance.
>
> Moreover, when evaluating a trial court's ruling, we keep in mind that an abuse of discretion is not merely an error in judgment. Rather, it involves bias, partiality, prejudice, ill-will, manifest unreasonableness or a misapplication of the law. By contrast, a proper exercise of discretion conforms to the law and is based on the facts of record.

*Commonwealth v. Street*, 69 A.3d 628, 633 (Pa. Super. 2013) (internal citation omitted).

Here, based on our review of the entire record, as set forth in our foregoing analysis of Appellant's sufficiency of the evidence argument, we conclude that the trial court did not abuse its discretion in denying Appellant's motion for a new trial. Accordingly, Appellant is entitled to no relief on this claim.[10]

We next address Appellant's argument that sufficient evidence does not support the trial court's finding that Appellant caused serious bodily injury under Section 3714(c). As a result, Appellant argues that the trial court erred in ordering him to pay a fine of $250. We disagree.

---

[10] Insofar as Appellant argues that the trial court shifted the burden of proof to him and inferred guilt solely based on his decision not to testify in his own defense at trial, we dismiss this argument as lacking merit. This argument is not only an unsubstantiated accusation against the trial court, but we also construe it as a challenge to the trial court's weight and credibility determinations. It is well established that determinations as to weight and credibility are solely for the trial court as fact-finder. *See Mobley*, 14 A.3d at 889-90. We also dismiss Appellant's argument that the trial court erred in accepting as credible the testimony of the Commonwealth's witnesses despite conflicts in their testimony. Again, we do not revisit the trial court's credibility determinations.

Section 3714(c) provides "[i]f the person who violates this section unintentionally causes the serious bodily injury of another person as a result of the violation, the person shall, upon conviction, be sentenced to pay a fine of $250." 75 Pa.C.S.A. § 3714(c). The Code defines "serious bodily injury" as "[a]ny bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or *impairment of the function of any bodily member or organ*. 75 Pa. C.S.A. § 102 (emphasis added).

Here, as the trial court found, it is undisputed that Mezier-Augustus was transported by ambulance to the hospital following the accident. Trial Court Opinion, 2/24/14, at 2. She remained at the hospital for two days and upon her release, "[she] was unable to walk for approximately six to eight weeks and had to use crutches."[11] *Id.* Clearly, given the nature and extent of her injuries, we conclude Mezier-Augustus' injury amounted to a "protracted loss or impairment of the function of any bodily member or organ." 75 Pa.C.S.A. § 102. Thus, the trial court's finding of serious bodily injury was supported by sufficient evidence of record. *See Commonwealth v. Nichols*, 692 A.2d 181, 183-184 (Pa.Super. 1997) (victim's jaw was wired shut for six weeks during which he could only ingest through a straw,

---

[11] Mezier-Augustus testified that because of the injury resulting from the accident, she was prescribed painkillers to cope with the pain. N.T. Trial, 8/29/13, at 24.

suffering a broken jaw and being confined to a liquid diet constitutes impairment of the function of a bodily member), *appeal denied*, 649 A.2d 670 (Pa. 1994); *Commonwealth v. Cassidy*, 668 A.2d 1143, 1146 (Pa. Super. 1995) (victim's wearing of removable braces on her wrist and back for two months comprised impairment of function of a bodily member), *appeal denied*, 681 A.2d 176 (Pa. 1996). Accordingly, the trial court did not err in ordering Appellant to pay a fine of $250 under Section 3714(c) of the Code.

We lastly address Appellant's challenge to the trial court's imposition of restitution.[12] In this regard, Appellant contends that the trial court erred in imposing restitution in the amount of $17,035.53,[13] because the

---

[12] We dismiss as wholly meritless Appellant's argument the trial court violated the jurisdictional amount of $12,000 under 42 Pa.C.S.A. § 1515(a)(3) by imposing restitution of $17,035.53 in this case. A simple reading of Section 1515 reveals that it applies only to the jurisdiction of magisterial district judges in civil cases, and not courts of common pleas, which *sub judice* imposed restitution. *See* 42 Pa.C.S.A. § 1515(a) ("[M]agisterial district judges shall . . . have jurisdiction of all of . . . civil claims . . . wherein the sum demanded does not exceed $12,000."); *see also* 18 Pa.C.S.A. 1106(d) (A $12,000 limit on restitution amounts applies only to magisterial district judges.). The instant case is neither a civil case nor does it in any way involve magisterial district judges. Also, Appellant argues—without citation to any relevant authority—that the trial court erred in imposing restitution because, by so doing, the trial court "usurped [Appellant's] constitutional right to a civil jury trial." Appellant's Brief at 31. We, however, reject this argument as baseless because, as noted *infra*, under Section 1106 of the Crimes Code, the trial court has full authority to impose restitution. *See* 18 Pa.C.S.A. § 1106(a).

[13] Our review of the transcript of the September 26, 2013, sentencing hearing reveals that Appellant did not challenge the amount of the

*(Footnote Continued Next Page)*

Commonwealth failed to establish a causal link between Mezier-Augustus' injury and his criminal conduct under Section 3714.

As this Court previously has explained, "'[w]hen the court's authority to impose restitution is challenged, it concerns the legality of sentence.'" **Commonwealth v. Oree**, 911 A.2d 169, 173 (Pa. Super. 2006) (citation omitted), **appeal denied**, 918 A.2d 744 (Pa. 2007). The determination as to whether a trial court imposed an illegal sentence is a question of law; our standard of review in cases dealing with questions of law is plenary. **Commonwealth v. Atanasio**, 997 A.2d 1181, 1182-83 (Pa. Super. 2010) (citations and quotations omitted). Although restitution is penal in nature, it is highly favored in the law and is encouraged so that the defendant will understand the egregiousness of his conduct, be deterred from repeating this conduct, and be encouraged to live in a responsible way. **Commonwealth v. Brown**, 981 A.2d 893, 895-96 (Pa. 2009) (internal citation omitted). Thus, it is settled that the "primary purpose of restitution is rehabilitation of the offender by impressing upon him that his criminal conduct caused the victim's loss or personal injury and that it is his responsibility to repair the loss or injury as far as possible." **Id.** at 895.

_(Footnote Continued)_ ————————————————

restitution ($17,035.53) or the methodology used to compute this amount. **See** N.T. Sentencing, 9/26/13, at 10-30.

Mandatory restitution as part of a defendant's sentence is authorized in the Crimes Code.[14]  **See** 18 Pa.C.S.A. § 1106; **Commonwealth v. Burwell**, 58 A.3d 790, 793 (Pa. Super. 2012).  Section 1106 of the Crimes Code provides in relevant part "upon conviction for any crime . . . wherein the victim suffered personal injury[15] directly resulting from the crime, the offender *shall be sentenced to make restitution* in addition to the punishment prescribed therefor." 18 Pa.C.S.A. § 1106(a) (emphasis added); **see also Barger**, 956 A.2d at 465 (Section 1106 applies to "those crimes to property or person where there has been a loss that flows from the conduct which forms the basis of the crime for which a defendant is held criminally accountable.")

We have held that Section 1106 of the Crimes Code applies to convictions for violations of the Motor Vehicle Code.  **See Commonwealth v. Genovese**, 675 A.2d 331, 333-34 (Pa. Super. 1996) (finding proper restitution for property damage resulting from the summary offense of careless driving).  Thus, **Genovese** affirms the appropriateness of the use of

---

[14] The Sentencing Code also contains provisions that govern the imposition of restitution.  Specifically, the Sentencing Code provides "the court *shall* order the defendant to compensate the victim of his criminal conduct for the damage or injury that he sustained."  42 Pa.C.S.A. § 9721(c) (emphasis added).

[15] The Crimes Code defines "personal injury" as "[a]ctual bodily harm, including pregnancy, directly resulting from the crime.  18 Pa.C.S.A. § 1106(h).

Section 1106 restitution to cases involving violation of the Motor Vehicle Code.

Instantly, Appellant challenges the trial court's imposition of restitution on the basis that Mezier-Augustus' injuries were not causally related to his conviction for careless driving. We disagree. As indicated in the preceding section of this memorandum relating to "serious bodily injury" under Section 3714(c), Mezier-Augustus' injuries would not have occurred *but for* Appellant's careless driving. In fact, the evidence of record amply supports the trial court's finding that Mezier-Augustus suffered personal injuries because of Appellant's hitting her with his vehicle. Specifically, as the trial court found, she remained at the hospital for two days and upon her release, "[she] was unable to walk for approximately six to eight weeks and had to use crutches." Trial Court Opinion, 2/24/14, at 2. Accordingly, we conclude that the trial court did not err in imposing upon Appellant restitution for $17,035.53.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/2/2014

- 16 -